IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ZACHARY CHAMBERS, #287502, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:18-CV-558-SRW |
| | ) | [WO] |
| | ) | |
| DENNIS MEEKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Zachary

Chambers, an inmate confined, post-conviction, in the Covington County Jail during the

time relevant to the complaint.[2] Chambers alleges that the defendants failed to protect him

from attack by inmate Kevin Lawrence on January 8, 2018 and did not provide him medical

treatment for injuries he suffered in this attack. Doc. 1 at 2–3, 5–7. Chambers names Dennis

Meeks, the sheriff of Covington County; Adam Syler, the jail administrator; David

Anderson, chief deputy of the Covington County Sheriff's Department; and Stewart

Brooks and Hunter Coon, officers at the Covington County Jail, as defendants in this case.[3]

---

[1]All documents and page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2]The Covington County Jail is located in Andalusia, Alabama.

[3]The surnames of two defendants listed in the complaint are not correct and the first names of some defendants are not provided. For purposes of clarity, and as the plaintiff does not dispute the correct names provided by the defendants, the court will refer to the defendants by their true names.

Chambers seeks relief from the defendants in both their individual and official capacities. Doc. 1 at 5. Chambers seeks monetary damages from the defendants for the alleged violations of his constitutional rights. Doc. 1 at 8.

The defendants filed an answer, a special report, supplements to their report and supporting evidentiary materials—including affidavits and jail records—addressing Chambers' claims for relief. In these documents, the defendants deny that they acted with deliberate indifference to Chambers' safety. Doc. 21-1 at 1; Doc. 21-2 1; Doc. 21-3 at 2–4; Doc. 21-5 at 3–5; Doc.25-1 at 3–4.[4] With respect to the claim regarding a denial of medical treatment, the defendants assert that Chambers received appropriate treatment for his injuries as determined by the jail's medical professionals and deny acting with deliberate indifference to Chambers' medical needs.[5] Doc. 21-3 at 3–4; Doc. 21-5 at 4–5 & 25-1 at 4.

After reviewing the initial special report filed by the defendants and documents attached thereto, the court on August 16, 2018 directed Chambers to file a response to each of the arguments set forth by the defendants in their report and advising him that his

---

[4]Doc. 25-1 is the properly executed affidavit of Hunter Coon, which defendants substituted for Doc. 21-4, his unexecuted affidavit.

[5]Although the defendants also raise Chambers' failure to exhaust his administrative remedies as an affirmative defense, Chambers maintains that he attempted to exhaust the administrative remedy in effect at the time his cause of action arose by seeking to use the grievance procedure provided on the kiosk system which, to his knowledge, constituted the only remedy available at that time. He suggests that he was unable to "access the proper grievance forms" and, therefore, had his sister contact officials at the jail to express his concerns. Doc. 27 at 1. Chambers also references a grievance that he allegedly filed on May 8, 2013 as an attempt to exhaust his remedies regarding the challenged actions, which occurred in January of 2018. Doc. 27 at 1–2. However, in a subsequent affidavit, Chambers concedes that he did not file a grievance on May 8, 2013, as he was not in the Covington County Jail at that time, and, in addition, he advises his brother actually filed the grievance submitted in October of 2013. Doc. 33 at 1. Regardless, any grievance Chambers may have filed in 2013 could not have addressed actions occurring in January of 2018. However, based on Chambers' initial assertion that he attempted to access the grievance procedure provided through the kiosk system but could not do so, the court will address the merits of the claims presented by Chambers.

response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. Doc. 23 at 3. The order specifically advised the parties that "<u>unless within fifteen (15) days from the date of this order a party files a</u> <u>response in opposition which presents sufficient legal cause why such action should not be</u> <u>undertaken</u> . . . the court may at any time [after expiration of the time provided for the plaintiff to file a response to the order] and <u>without further notice to the parties</u> (1) treat the special report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." Doc. 23 at 4 (emphasis in original) (footnote omitted). In compliance with this order, Chambers filed a response and sworn affidavit on August 30, 2018. Doc. 27.

Upon receipt of a supplemental special report from the defendants further addressing the exhaustion defense, Doc. 30, the court provided Chambers an opportunity to file a response to this report. Doc. 28. As permitted by this order and after a requested extension of time, Chambers filed an additional affidavit in response on November 8, 2018. Doc. 33.

Pursuant to the orders entered in this case, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint, the plaintiff's response and affidavits in opposition, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed.R.Civ.P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits or properly sworn statements], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, sworn statements, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose as an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *see also* Fed.R.Civ.P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a

verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial

evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to a plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the undersigned finds that Chambers has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants. *See Matsushita*, 475 U.S. at 587.

### III. IMMUNITY DEFEENSES

#### A. Sovereign Immunity

To the extent that Chambers seeks monetary damages from the defendants in their official capacities, the defendants maintain that in operating the Covington County Jail they are state actors entitled to sovereign immunity. Doc. 21 at 11–12, citing *Free v Granger*, 887 F.2d 1552, 1557 (1th Cir. 1989) (holding that suits against sheriffs "in their official capacities are effectively suits against the entity that those officials represent. Thus, the plaintiff's claim against [the] Sheriffs . . . is in substance a Section 1983 action in which the State of Alabama is the real party in interest."); *Carr v. City of Florence, Ala.*, 916 F.2d

1521, 1527 (1th Cir. 1990) ("hold[ing] that the sheriff's eleventh amendment immunity . . . extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego."); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430–31 (11th Cir 1997) (holding that county jailers, like sheriffs and deputies, are entitled to Eleventh Amendment immunity for official capacity claims); *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1288–89 11th Cir 1998)(holding that a sheriff and his deputies act as officers of the State when supervising inmates and otherwise operating county jails for purposes of imposing liability under § 1983).

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Summary judgment is therefore due to be granted in favor of the defendants on these claims.

## B. Qualified Immunity

The defendants also raise the defense of qualified immunity to the claims brought against them in their individual capacities. Doc. 21 at 12–15. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal

quotations and citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). "Unless a government agent's act is so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor is immune from suit." *Lassiter v. Ala. A&M University Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Education*, 115 F.3d 821, 826–27 n.4 (11th Cir. 1997). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Qualified immunity, however, is only an affirmative defense to a request for damages, the sole relief sought in this case; it has no impact on requests for declaratory or injunctive relief. *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow v. Alexander*, 457 U.S. 800 (1982); *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (holding that the defense of qualified immunity is limited to actions for monetary damages and does not serve as a defense to actions seeking equitable relief).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez*, 325 F.3d at 1234. In this case, it is

clear "that the defendants were acting within their discretionary authority[]" as jail officials at the time of the incidents at issue so "the burden shifts to [Chambers] to show that qualified immunity is not appropriate." *Id*.; *see also Townsend v. Jefferson Cnty*., 601 F.3d 1152, 1158 (11th Cir. 2010). To meet this burden, Chambers must prove both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir.2004); *Crosby v. Monroe Cnty*., 394 F.3d 1328, 1332 (11th Cir. 2004) (same); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation."). This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Id*.; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42) (holding that a court may analyze the elements "in whatever order is deemed most appropriate for the case.").

## IV. DISCUSSION

### A. Standard of Review—Deliberate Indifference

The actions about which Chambers complains occurred while Chambers was a convicted inmate confined in the Covington County Jail. "The Eighth Amendment governs 'the treatment a prisoner receives in [jail or] prison and the conditions under which he is confined.' *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)." *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005) (per curiam). A defendant's "duty

under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for [jail] officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted). Officials responsible for inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with this knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 at 834. "Within [a jail's] volatile 'community,' [its] administrators are to take all necessary steps to ensure the safety of . . . the [jail] staff and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit, however, has consistently "stress[ed] that a prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (internal quotation marks and citation omitted). The duty to protect inmates from one another is not absolute "because the Eighth Amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is punishment depends on the mental state of those who cause or fail to prevent it. The requisite mental state for [jail] officials is intent, or its functional equivalent, described as deliberate indifference[.]" *King*

*v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal quotation marks and citations omitted). "Only '[a jail] official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Eleventh Circuit has consistently held that "'[i]n order to state a § 1983 cause of action against [jail] officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981), *cert. denied*, 464 U.S. 932 (1983); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (same).

The law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exists. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did

not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Carter*, 352 F.3d at 1349) (citing *Farmer*, *supra*, in noting that to demonstrate deliberate indifference a defendant "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the . . . official must also 'draw that inference.'"). "Proof that the defendant should have perceived the risk, but did not, is insufficient." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person knew at the time of the incident." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). A jail official must be aware of a sufficiently serious threat to an inmate's safety before the Eighth Amendment "imposes a duty to provide reasonable protection. Merely negligent

failure to protect an inmate from attack does not justify liability under section 1983[.] . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a [jailer's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted); *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (same); *King*, 997 F.3d at 261 ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.") (internal quotation marks omitted). Deliberate indifference requires "a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Finally, the plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known serious risk of harm caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Consequently, to survive the properly supported motion for summary judgment filed by the defendants, Chambers must first demonstrate that an objectively substantial risk of serious harm to him existed prior to the assault by inmate Lawrence and "that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), (citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Chambers must then satisfy the subjective component. To do so, Chambers "must [show] that the defendant subjectively knew that [Chambers] faced a substantial risk of serious harm from [his inmate attacker]. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Johnson*, 568 F. App'x at 721 (internal citations omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "*particular threat or fear felt by [the] [p]laintiff.*" *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

## B. Clams for Relief

1. <u>**Failure to Protect.**</u> Chambers alleges that the defendants violated his rights protected by the Eighth Amendment when they acted with deliberate indifference to his safety regarding an assault against him by inmate Kevin Lawrence on January 8, 2018. In support of this claim, Chambers maintains that this assault occurred because the defendants failed to take appropriate action to protect him from Lawrence despite their knowing that he and Lawrence were enemies. Doc. 1 at 6.

In their affidavits, the defendants deny acting with deliberate indifference to Chambers' safety. In addition, the officers on duty at the time of the assault deny any knowledge of inmate Lawrence's posing a risk of harm to Chambers and maintain that the attack at issue occurred when inmate Lawrence randomly escaped his escort by defendant Brooks; ran into D-Block, which was not this inmate's assigned living area; and struck Chambers. Doc. 21-3 at 3; Doc. 21-5 at 3–4; Doc. 25-1 at 3–4. The nature of the attack on Chambers is supported by the video evidence filed by the defendants. Doc. 21-9 & Doc. 21-11.

In his affidavit, defendant Brooks avers that:

On January 8, 2018 around 6:30 PM, I was escorting inmate Kevin Lawrence back to his cell unit. Correctional Officer Paul Steele had not finished feeding the inmates in D-block, so I stood with inmate Lawrence and waited to close D-block's doors before opening A-block doors so I could place inmate Lawrence back in his cell unit.

While waiting for the rest of the inmates in D-block to be fed, inmate Lawrence ducked underneath two trustees that were helping Correctional Officer Steele to hand out food to the inmates and ran into D-block.

After entering D-block, inmate Lawrence ran directly to Mr. Chambers and punched him in the head.

I immediately went after inmate Lawrence, but was unable to stop him before the assault took place.

Once I was able to reach inmate Lawrence, I immediately removed him from D-block.

At that time, I yelled for Officer Hunter Coon who was working in the control center to close D-block's cell door and to open A-block's cell door.

I was then able to place inmate Lawrence back into A-block.

After securing inmate Lawrence in A-block, I subsequently returned to D-block to assist Mr. Chambers who was lying on the ground.

Other than basic first aid, the Covington County Jail staff is not medically trained, and thus, it is the policy to defer to and rely upon the professional opinions of doctors and nurses provided within the Covington County Jail.

I helped Mr. Chambers up off of the floor and escorted him to the nurse's station to be evaluated by Nurse Wanda Craft.

Doc. 21-3 at 3. Defendant Brooks also denies that inmates Chambers and Lawrence were "known enemies." Doc. 21-2 at 4 ("Mr. Chambers' allegation that it is a documented fact that he and Kevin Lawrence are known enemies is incorrect.").

In his affidavit, defendant Syler states:

With regards to Mr. Chambers' specific allegations stated within his Complaint, I have reviewed video surveillance footage of an altercation that occurred on January 8, 2018 between Mr. Chambers and fellow inmate, Kevin Lawrence.

My review of the video surveillance footage shows Correctional Officer Stewart Brooks escorting inmate Kevin Lawrence back to his cell unit (A-block).

At that time, Correctional Officer Paul Steele had not finished feeding the inmates in D-block, so Officer Brooks was standing with inmate Lawrence in the hallway while waiting for A-block's door to be opened so he could place inmate Lawrence back in his cell unit.

While waiting for the rest of the inmates in D-block to be fed, inmate Lawrence ducked underneath two trustees that were assisting Correctional Officer Steele to hand out food and he ran into D-block .

After entering D-block, inmate Lawrence ran directly to Mr. Chambers and punched him in the head.

Officer Brooks immediately went after inmate Lawrence, but was unable to stop him before the assault took place.

Once Officer Brooks was able to reach inmate Lawrence, he immediately removed him from D-block.

At that time, Officer Brooks requested that D-block be locked down and for A-block's cell door to be opened.

Officer Brooks was then able to place inmate Lawrence back into A-block.

After securing inmate Lawrence in A-block, Officer Brooks returned to D-block to assist Mr. Chambers who was lying on the ground.

Officer Brooks helped Mr. Chambers up off of the floor and escorted him to the nurse 's station to be evaluated .

Inmate Lawrence was subsequently placed in a lockdown cell unit (C-block) for assaulting Mr. Chambers.

.      Officer Brooks subsequently contacted me about the situation that had occurred.

Mr. Chambers' allegation that it is a documented fact that he and Kevin Lawrence are known enemies is incorrect. Additionally, Mr. Chambers and inmate Lawrence were housed in separate housing units.

Doc. 21-5 at 3–4.

The record contains no evidence which shows an objectively substantial risk of serious harm existed to Chambers from inmate Lawrence at the time of the attack made the basis of this civil action.  In addition, the record is devoid of evidence the defendants had subjective knowledge that inmate Lawrence posed any risk of harm to Chambers prior to the challenged assault. It is likewise clear that no defendant drew the inference that Lawrence posed a serious risk of harm to Chambers at the time of the attack and, with his knowledge, failed to protect Chambers from Lawrence.  Moreover, during an investigation of the incident at issue, defendant Syler undertook a review of available video evidence and determined this incident occurred randomly when inmate Lawrence broke free of

defendant Brooks, ran from him into an area to which he was not assigned and assaulted Chambers. Doc. 21-5 at 3–4. Chambers has offered no evidence to dispute this account of the attack. The allegations made by Chambers do not demonstrate either the objective or subjective elements of his deliberate indifference claim and, at most, sound only in negligence and fail to state a claim of constitutional magnitude. *Daniels v. Williams*, 474 U.S. 327, 332 (1986) (internal quotation marks and citations omitted) (The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries."); *Kingsley v. Hendrickson*, 576 U.S. 389, 396, 135 S.Ct. 2466, 2472 (2015) (holding it is well-settled "[t]hat . . . 'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional [protection].'") (emphasis added in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1999)); *Farmer*, 511 at 835 (noting that a plaintiff must show more than mere negligence to proceed on a claim of deliberate indifference under the Eighth Amendment); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015). ("[N]egligence claims are not actionable under § 1983[.]."). The "[m]ere[] negligent failure [of a defendant] to protect an inmate from attack does not justify liability under section 1983." *Brown*, 894 F.2d at 1537; *King*, 997 F.3d at 261 ("Negligence, even gross negligence, is not enough.").

In sum, Chambers has failed to present evidence showing that inmate Lawrence posed "an objectively substantial serious risk of harm" to him prior to the assault about which he complains, a requisite element for establishment of deliberate indifference. *Marsh*, 268 F.3d at 1028–29. Further, even if Chambers had satisfied the objective component, his deliberate indifference claim nevertheless fails as the record contains no

evidence that any defendant was subjectively aware of any risk of harm to Chambers posed by inmate Lawrence at the time of the assault made the basis of the complaint. The law is clear that jail personnel responsible for an inmate's safety cannot be liable for a risk of which they are unaware. *Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety[.]"). Thus, deliberate indifference has not been shown. *Johnson*, 568 F. App'x at 722 (holding that action was properly dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker]."); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (holding that where Plaintiff did "not identif[y] any specific 'serious threat' from [inmate attacker]" or report any such threat to the defendants, mere "fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (concluding that "the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim. While [Plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate . . ., he did not allege that the defendants had notice that he was in danger from . . . the inmate who attacked him. Simply put, the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack. . . . Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures, his claim fails.");

*Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt [from this particular inmate]."); *see also McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was generally "in fear for [his] life."); *Tuttle v. Christie*, 2015 WL 9239232 at *2 (D.N.H. Nov. 10, 2015), Report and Recommendation adopted, 2015 WL 9216578 (D.N.H. Dec. 15, 2015) (finding "summary judgment on the Eighth Amendment claim . . . proper because the record is devoid of any facts suggesting that the defendant was subjectively aware that [the assailant] . . . presented a danger to [Plaintiff] prior to the altercation.").

The record in this case contains no evidence showing that the defendants acted with deliberate indifference to Chambers' safety. The defendants are therefore entitled to qualified immunity from the plaintiff's request for monetary damages made against them in their individual capacities and summary judgment is due to be granted in favor of the defendants on the plaintiff's claims alleging a violation of the Eighth Amendment regarding deliberate indifference to his safety.

2. **Medical Treatment.** Chambers asserts that the defendants failed to refer him for medical treatment for injuries suffered in the attack on January 8, 2018 and did not intervene to ensure he receive adequate medical treatment from the jail's medical

personnel.  However, defendants Meeks and Anderson had no personal involvement in the actions about which Chambers complains.  Doc. 21-1 at 2; 21-2 at 2.  It is also undisputed that none of the individuals named as defendants in this case is a trained medical professional; they defer to the jail's health care providers for decisions regarding medical treatment of inmates. Doc. 21-3 at 3 & Doc. 21-5 at 4. As discussed in detail below, Chambers fails to demonstrate a genuine dispute of material fact sufficient to preclude entry of summary judgment in favor of the defendants on the claims related to the medical treatment he received.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, jail personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment.)"

> That medical malpractice—negligence by a physician [or other medical provider]—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown.  Evidence must support a conclusion that a prison [medical provider's] harmful acts were intentional or reckless.  *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114

S.Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach a defendant must know of and then disregard an excessive risk to prisoner's health or safety). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable

under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). This is likewise true for a claim reviewed under the objective reasonableness standard.

When a plaintiff challenges the constitutionality of medical care under either standard of review, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment. *Estelle*, 429 U.S. at 104–07, 97 S.Ct. 285. An allegation of negligence is [likewise] insufficient to state a due process claim. *Daniels v. Williams*, 474 U.S. 327, 330–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)." *Simpson v. Holder*, 200 F.App'x 836, 839 (11th Cir. 2006); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015) (Due to "the state of mind requirement for all due process violations[,] . . . medical malpractice and negligence claims are not actionable under [42 U.S.C.] § 1983, but are the grist of state law.); *Kingsley*, 576 U.S. at 395–96, 135 S.Ct. 2472 (With respect to the "legally requisite state of mind" attendant to a defendant's physical acts in determining the objective reasonableness of such acts, "the defendant must possess a purposeful, a knowing, or possibly a [criminally] reckless state of mind. That is because . . . 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1999); *Estelle*, 429 U.S. at 106 (neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 835–36 (A complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Daniels*, 474 U.S. at 332 (The Constitution "does not purport to supplant traditional tort law in laying down rules of

conduct to regulate liability for injuries. . . . We have previously rejected reasoning that would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.") (internal quotations omitted); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F.App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint alleging "misdiagnosis and inadequate treatment [as such] involve no more than medical negligence."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that negligence in misdiagnosis of pituitary tumor not sufficient to show deliberate indifference); *Barr v. Fla. Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (finding Plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3–4 (M.D. Fla. Aug. 30, 2012), appeal dismissed (11th Cir. 12-14749 Nov. 28, 2012) (finding misdiagnosis of inmate with Ganglion cyst that "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence. . . . At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)) ("An allegation of misdiagnosis, even when accompanied by a speculative

allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved.  Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim.").  In addition, *Kingsley's* requirement of a purposeful or knowing state of mind, its assertion that the Constitution protects only against deliberate acts and its affirmation that negligence categorically fails to provide a basis for liability in section 1983 actions, 576 U.S. at 396, 135 S.Ct. at 2472, serves to preclude the constitutionalization of medical malpractice claims such as those which allege misdiagnosis or negligent treatment of a condition.  Consequently, merely accidental inadequacy, negligence in diagnosis, negligence in treatment and medical malpractice do not suffice to establish the objective component of claims seeking relief for alleged constitutional violations regarding medical treatment provided to an inmate, whether he is a pretrial detainee or a convicted prisoner.

Additionally, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things: aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted) (alterations in original).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Quinones*, 145 F.3d at 168 (holding defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore the known risk to such

condition to warrant finding deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.  Also, when medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent."  *Massey v. Montgomery County Detention Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'  *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that the defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").  Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of

treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks omitted). "A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact inmate desires a different mode of treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Furthermore, "[s]elf-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F.App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir.1990)).

The law is likewise clear that an inmate is not entitled to referral to an outside physician for evaluation. *Amarir v. Hill*, 243 F.App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that the defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm."); *Dixon v. Jones*, 2014 WL 6982469, at *9 (M.D. Ala. Dec. 9, 2014) (finding that jail physician's denial of second opinion regarding treatment provided to inmate for physical injuries did not constitute deliberate

indifference); *Youmans v. City of New York*, 14 F.Supp. 357, 363–64 (S.D.N.Y. 2014) (noting that "courts in the Second Circuit have held that failure to provide a second opinion is not generally a violation of a prisoner's Eighth Amendment rights."); *Schomo v. City of New York*, 2005 WL 756834, at *10 (S.D.N.Y. Apr. 4, 2005) (finding doctor's decision to deny inmate second opinion did not constitute deliberate indifference "since prisoners are not constitutionally entitled to a second medical opinion.").

Defendant Brooks, after securing inmate Lawrence in his cell, escorted Chambers to the health care clinic for evaluation of his injuries. Doc. 21-3 at 3. At this time, Chambers received treatment from the on-duty nurse and continued to have access to health care personnel after his receipt of this initial treatment. Doc. 21-13 at 2–6. The medical records and affidavits before the court demonstrate that the nurse noted that Chambers was bleeding from his mouth due to a cut on the right side of his tongue. Doc. 21-13 a 2. The nurse placed Chambers in "holding" for observation but he requested return to his cell block and was allowed to do so. Doc. 21-13 at 2. On January 9, 2018, Chambers submitted a medical inquiry in which he sought treatment for head pain he attributed to the prior day's assault. Doc. 21-13 at 3. Based on this request, medical personnel evaluated Chambers the following day. Doc. 21-13 at 4, and prescribed him Ibuprofen for seven days and advised him "if no improvement come back to medical." Doc. 21-13 at 5–6. Thus, medical personnel at the Covington County Jail evaluated Chambers for his complaints of headaches and mouth pain, assessed his need for treatment, prescribed medications to treat his condition, and provided treatment to Chambers in accordance with their professional judgment.

The defendants maintain that they did not act in violation of Chambers' constitutional rights regarding his medical treatment or take any action to deprive him of adequate medical treatment upon his evaluation by the jail's medical personnel. Doc. 21-1 at 3; Doc. 21-2 at 2 at 2; Doc. 21-3 at2–4; Doc. 21-5 at 3; Doc. 25-1 at 2. Specifically, the defendants aver that "[o]ther than basic first aid, the Covington County Jail staff is not medically trained, and thus, it is the policy to defer to and rely upon the professional opinions of doctors and nurses provided within the Covington County Jail." Doc. 21-3 at 3; Doc. 21-5 at 4. The medical records establish that in accordance with this policy Chambers received treatment for his injuries from the jail's medical personnel. Doc. 21-13 at 2–6.

Under the circumstances of this case, the undersigned finds that the undisputed course of treatment undertaken by medical personnel at the Covington County Jail did not violate Chambers' constitutional rights as it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Although Chambers believes that medical personnel at the jail should have ordered additional tests to assist in diagnosing his health issues, whether they "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal citation omitted); *Garvin*, 236 F.3d at 898 (holding that difference of opinion regarding manner in which to address a medical complaint fails to demonstrate a constitutional violation); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Howell*

*v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991) (The failure of medical personnel to pursue alternative means of treating inmate's condition does not "rise beyond negligence to the level of [deliberate indifference].""); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

Chambers has failed to present any evidence that the individuals he names as defendants knew that the manner in which the jail's medical personnel provided treatment to him created a substantial risk to his health and, with this knowledge, consciously disregarded such risk. The record is therefore devoid of evidence that the defendants acted with deliberate indifference to Chambers' medical needs. Moreover, under the circumstances of this case, it appears that the medical treatment provided to Chambers was objectively reasonable.

It is clear from the evidentiary materials submitted by the defendants that they are not in any way involved in decisions regarding medical treatment provided to inmates, as they are not medically trained and defer to the medical professionals assigned to the Covington County Jail. To the extent that the complaint can be construed to assert that the named defendants acted with deliberate indifference because they did not intervene in the treatment furnished by the medical providers, this assertion entitles Chambers to no relief.

Chambers has failed to establish deliberate indifference on the part of the defendants as he has not demonstrated they were aware of facts establishing "an objectively serious medical need" or that these defendants consciously disregarded any known serious risk to Chambers' health resulting from the altercation with inmate Lawrence. *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must

know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). The failure to alleviate a significant risk that an officer "should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

Insofar as Chambers seeks to hold the defendants liable for the treatment provided by medical professionals, he is likewise entitled to no relief as

> "[t]he law does not impose upon [jailers] a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [jail] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Finally, to the extent Chambers seeks to hold the defendants liable under the theory of respondeat superior, he is entitled to no relief as the law is well settled that liability in a 42 U.S.C. § 1983 action may not be based on the theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior."); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[O]fficials are not liable under § 1983 for the unconstitutional acts of their subordinates

[or co-workers] on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (holding 42 U.S.C. § 1983 does not allow a plaintiff to hold officials liable for the actions of other officials under either a theory of respondeat superior or vicarious liability.). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability could attach to the defendants only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. Since the defendants did not participate in the provision of medical treatment to Chambers, the court will address whether a causal connection existed.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of the defendants, Chambers must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in [the alleged constitutional violation], or . . . facts [that] support an inference that [the defendants] directed [medical personnel] to act unlawfully, or knew that [they] would act unlawfully and failed to stop [them] from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). After extensive review of the pleadings and evidentiary materials submitted in this case, the court concludes that Chambers has failed to meet this burden.

The record before the court contains no evidence to support an inference that the defendants in this case directed the jail's medical personnel to act unlawfully or knew that medical personnel would act unlawfully and failed to stop such action. In addition, Chambers has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which the named defendants failed to take corrective action. Further, the record demonstrates that the jail's medical personnel did not act pursuant to a policy enacted by the defendants in providing medical treatment to Chambers; instead, the medical staff at the Covington County Jail provided treatment to Chambers in accordance with their professional judgment. Thus, the requisite causal connection does not exist in this case as to the defendants named herein, and their liability under the custom or policy standard is likewise not justified. Moreover, "[i]n light of the Court's determination that there was no constitutional deprivation, there is no basis for supervisor liability." *Nam Dang*, 871 F.3d at 1283, citing *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008); *Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007).

For the foregoing reasons, the defendants are entitled to qualified immunity from Chambers' request for monetary damages from them in their individual capacities, and entitled to summary judgment on the claims alleging a lack of adequate medical treatment.

## V. CONCLUSION

Accordingly, it is ORDERED that

1. The defendants' motion for summary judgment is GRANTED.

2. Judgment is GRANTED in favor of the defendants.

3. This case is DISMISSED with prejudice.

4. The costs of this proceeding are taxed against the plaintiff.

A separate judgement will be entered.

DONE, on this the 12th day of July, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge
